**BARTHOLOMEW COUNTY HOSPITAL, its Executive Director, Robert S. Borczon, its Board of Trustees, Frank Forster, Earl L. Sprague, Lewis W. Essex and Barbara Steward, Defendants-Appellants,**

v.

**Charles R. RYAN, M.D., Plaintiff-Appellee.**

No. 1–981A283.

Court of Appeals of Indiana, First District.

Oct. 19, 1982.

Rehearing Denied Dec. 6, 1982.

Harold V. Jones, Jr., Jones & Patterson, Columbus, Joseph F. Shikany, Dillon, Hardamon & Cohen, Indianapolis, for defendants-appellants.

Cline, King, Beck, Harrison & Runnels, Columbus, Jones & Loveall, Franklin, for plaintiff-appellee.

RATLIFF, Presiding Judge.

## STATEMENT OF CASE

Bartholomew County Hospital appeals the trial court's mandatory injunction ordering the Hospital to grant Dr. Charles R. Ryan certain hospital privileges. We dismiss the appeal as moot.

## FACTS

Ryan graduated from Case Western Reserve University of Medicine in 1972. He completed a year of residency in general surgery at Case Western Reserve and three years at Mt. Sinai Hospital in Cleveland, Ohio. From 1977 until June 1978 he was a research fellow and Co-Chief Resident in Surgery at Mt. Sinai. He then became a resident in colon and rectum surgery at Presbyterian Hospital in Dallas, Texas. In 1972 Ryan had been licensed to practice medicine in Ohio, and in 1978 he was certified by the American Board of Surgery. In 1978 he was given a temporary license in Texas, and in 1979 he was licensed to practice medicine in Indiana.

While in Texas Ryan was charged with practicing medicine without a state license for writing prescriptions for himself for Percodan and for Quaaludes using his Ohio BDDN number. He entered a plea of *nolo contendere,* was fined $500.00, and was given a three-month suspended sentence. The hospital there then suspended Ryan from his residency program. Ryan came back to Columbus, Indiana, where he had grown up, where his father was a surgeon, and where

he applied for admission to the staff of Bartholomew County Hospital. In his application for staff privileges Ryan neglected to mention his Texas experience, stating only that he had taken additional work in rectal and colon surgery on the dates specified. In their review of Ryan's application the Credentials Committee of the Hospital discovered the fact that Ryan had been suspended from his residency and the details surrounding the episode and sent Ryan to Dr. Bates, an internist in Lansing, Michigan, to determine whether or not Ryan was an abuser of alcohol or narcotics. While Dr. Bates reported that Ryan was not an abuser of alcohol or narcotics, he determined that Ryan suffered from paranoid schizophrenia. Although they did not rely on Dr. Bate's report alone, the Executive Committee and the Board of Trustees of the Hospital voted to deny Ryan staff privileges, and Ryan brought this action for injunctive relief. On August 31, 1981, the trial court made extensive findings of fact and ordered the Hospital to extend Ryan privileges in general surgery for a six-month probationary period beginning September 7, 1981, under the supervision of two Board Certified general surgeons. On September 4, 1981, the trial court amended its order by stating that when Ryan reapplied for privileges pursuant to the Hospital's bylaws, "he shall be judged by the same standards as any other surgeon reapplying for privileges." Record at 503. On February 11, 1982, the Hospital filed in the Court of Appeals a Motion for Stay of Judgment Pending Appeal which the court denied after hearing oral argument. Ryan obtained his probationary staff appointment, and at the conclusion thereof, in April 1982, he was appointed to the Associate Medical Staff in the clinical department of surgery for the remainder of the medical staff year of 1982. The Hospital's letter of appointment reads as follows:

"Dear Dr. Ryan:

This is your notification that our Board of Trustees on April 17, 1982 appointed you to the Associate Medical Staff in the clinical department of surgery for the remainder of the Medical Staff year 1982.

The following is the Board resolution concerning your appointment:

'Pursuant to the order of Larry J. McKinney, Judge, Johnson Circuit Court and based only on the actions of the Credentials and Executive Committee of the Medical Staff and the information submitted on behalf of Dr. Charles R. Ryan for the period beginning September 7, 1981 to the present and particularly the recommendations of Dr. Frank King and Dr. Robert Jacobs and giving no consideration to Dr. Ryan's history and record before that time as ordered by the court; Dr. Charles R. Ryan is appointed to the Associate Medical Staff of the Bartholomew County Hospital with privileges in general surgery and further in the requested areas of gynecology, otorhinolaryngology, thoracic and vascular surgery subject to supervision by a board certified surgeon who currently has privileges in these procedures, such supervision to continue until such time as documentation of his qualifications and experience in these areas acceptable to Credentials Committee and the Board of Trustees is received.'

Appointment to the Associate Medical Staff does not imply a judgment of your qualifications, experience, or clinical judgment. According to the Medical Staff Bylaws and standards of the Joint Commission on Accreditation of Hospitals, provisional privileges are in[i]tially granted to every new staff member. Refer to the Medical Staff Bylaws for your obligations as a member of the Associate Medical Staff.

Your Medical Staff appointment is subject to reappointment each calendar year. This appointment becomes effective when you have signed, and the hospital has received, the enclosed letter in which you accept, and agree to abide by, the terms and conditions of the appointment.

Sincerely,

BARTHOLOMEW COUNTY HOSPITAL

/s/ Robert S. Borczon
    Robert S. Borczon
    Executive Director"

Ryan has moved for dismissal of the appeal or for affirmance of the trial court's decision on the grounds that the issues raised by the Hospital are now moot.

## ISSUES

The Hospital raised the following issues for our consideration:

1. Did the trial court err in finding that in passing upon Ryan's application for hospital privileges the Hospital could not consider any information that was presented to the Indiana Medical Licensing Board?

2. Did the trial court err in finding that the Hospital's administrator, Robert Borczon, withheld certain information from the medical staff?

3. Did the trial court err in mandating the Hospital to extend privileges in general surgery to Ryan for a six-month probationary period?

4. Is the trial court's order of September 4, 1981, vague and impossible to follow?

## DISCUSSION AND DECISION

We note initially that Ryan has filed a motion to dismiss the appeal on the grounds that the issues presented by this case are now moot. The Hospital, however, disagrees, arguing that the judgment precludes it from considering all the information at its disposal when it reviews Ryan's future requests for renewal of his staff privileges there. We agree with Ryan and disagree with the Hospital.

■ First, we find that the issues relating to the trial court's mandatory injunction which expired by its own terms on March 7, 1982, to be moot. An issue becomes moot when it is " 'no longer "live" or when the parties lack a legally cognizable interest in the outcome' " of its resolution. *U. S. Parole Commission v. Geraghty,* (1980) 445 U.S. 388, 396, 100 S.Ct. 1202, 1208, 63 L.Ed.2d 479, citing *Powell v. McCormack,* (1969) 395 U.S. 486, 496, 89 S.Ct. 1944, 1950, 23 L.Ed.2d 491. *See also* 20 Am.Jur.2d *Courts* § 81 (1965); 2 I.L.E. *Appeals* § 419 (1957). It is the universal practice of courts in Indiana as elsewhere to dismiss an appeal

where it becomes unnecessary to decide the question presented. *Dunn v. State,* (1904) 163 Ind. 317, 321, 71 N.E. 890, 891. " '[W]hen the principal questions in issue have ceased to be matters of real controversy between the parties, the errors assigned become moot questions and the court will not retain jurisdiction to decide them....' " *State Highway Commission v. Crystal Flash Petroleum Corporation,* (1941) 109 Ind.App. 255, 259, 34 N.E.2d 148, 149, citing *Modlin v. Board,* (1913) 55 Ind.App. 239, 242, 103 N.E. 506, 508. Likewise, when this court is unable to render effective relief upon an issue, the issue is deemed moot, and this court will not reverse a lower court's determination "where absolutely no change in the status quo will result." *Krochta v. State,* (1978) Ind.App., 372 N.E.2d 475, 478. In the instant case, whether or not the trial court erred in its entry of August 31, 1981, is a moot question and that part of the appeal relating to the granting of the six-month probationary relief must be dismissed.

■ Second, we reach the same conclusion with respect to the September 4, 1981, clarification of the trial court's order. That order was perfectly clear: at the end of the probationary period (*i.e.,* March 7, 1982) and upon future periodic evaluations, Ryan should be evaluated according to the same procedures and standards used by the Hospital and its committees to evaluate any other staff member making a similar application. As a member of the Associate Medical Staff in the clinical department of surgery, Ryan is subject to Article III, Section 4, as amended on March 28, 1977, of the Hospital's bylaws:

"The associate medical staff shall consist of physicians and dentists who are being considered for advancement to membership on the active staff or courtesy staff. They shall be appointed to a specific department and shall be eligible to serve on departmental committees and to vote on matters before such committees. The requirements for associate staff membership shall be the same as for active staff membership on all departments.

A physician desiring to practice in any department shall serve a period of associate membership for a period of at least one year and not longer than two years. [The associate membership period shall be considered to begin when the member first commences his actual hospital practice, i.e., when he first performs any of the medical services for which he has been granted privileges. (Ed. 1977 Amend.)] During the associate membership period the clinical work of the associate member shall be reviewed by the medical staff; the associate member shall not hold office in the medical staff nor serve as chairman of any medical staff meetings. He shall attend at least one meeting of the Executive Committee and one meeting of the Medical Care Evaluation Committee. The Medical Staff shall report its recommendation to the Board of Trustees when the associate member shall have fulfilled the requirements of full active or courtesy membership. All rules that apply to the active staff shall apply to the associate staff members."

In addition, Section 7 states,

"All initial appointments to the associate medical staff shall be provisional until the end of the calendar year. Reappointment to the associate staff may not exceed two full calendar years, at which time the failure to advance an appointee from associate to active or courtesy staff shall be deemed a termination of his staff appointment. A member of the associate medical staff whose membership is so terminated shall have the rights accorded by these bylaws to a member of the active medical staff who has failed to be reappointed."

Section 3 of Article IV of the Hospital's Bylaws spell out the specific procedure to be followed by Ryan and the Hospital for reappointment:

"a. The Credentials Committee shall review all pertinent information available on each practioner scheduled for periodic appraisal, for the purpose of determining its recommendations for reappointments to the Medical Staff and for the granting of clinical privileges for the ensuing period, and shall transmit its recommendations, in writing, to the Executive Committee at its November meeting. Where non-reappointment or a change in clinical privileges is recommended, the reason for such recommendation shall be stated and documented.

b. Each recommendation concerning the reappointment of a medical staff member and the clinical privileges to be granted upon reappointment shall be based upon such member's professional competence and clinical judgment in the treatment of patients, his ethics and conduct, his attendance at medical staff meetings and participation in staff affairs, his compliance with the hospital bylaws and the medical staff bylaws, rules and regulations, his cooperation with hospital personnel, his use of the hospital's facilities for his patients, his relations with other practitioners, and his general attitude toward patients, the hospital and the public.

c. The Executive Committee shall present written recommendations at the next medical staff meeting. The Medical Staff shall transmit its recommendations to the Board of Trustees through the Executive Director, prior to its final scheduled meeting of the year, concerning the reappointment, non-reappointment and/or clinical privileges of each practitioner then scheduled for periodic appraisal. Where non-reappointment or a change in clinical privileges is recommended, the reasons for such recommendations shall be stated and documented.

d. Thereafter, the procedure provided in Section 2. of this Article IV relating to recommendations on applications for initial appointment shall be followed."

We find nothing in the trial court's order of September 4, 1981, which would tend to suggest or which should suggest that Ryan be treated in a manner different from any other member of the Associate Medical Staff reapplying for any privilege at the Hospital. This part of the court's order is really surplusage, and future letters of the Hospital to Ryan need no longer be concerned with the trial court's orders of August 31, 1981, or September 4, 1981.

Finally, we are unable to justify this court's consideration of the issues involved in the appeal of the trial court's order of either August 31 or September 4 on the basis of the public interest exception. That exception may be invoked only upon the confluence of three elements: the issue involves a question of great public importance which is likely to recur in a context which will continue to evade review. *See Krotcha; see also* 1 I.L.E. *Appeals* § 3 (1957); 2 I.L.E. *Appeals* § 121 (1957). Although the questions raised here are no doubt of great theoretical interest to the Hospital, they would involve only a modicum of interest to the public at large and are not likely to recur in a context which will evade judicial review. The issue of initial appointment cannot recur in this case. If Ryan is denied reappointment to the associate, active, or courtesy staff at some point in the future and he seeks to appeal that determination through judicial channels, the posture of his case will be significantly different from the present one. We shall not at this time pass judgment on abstract issues not before us. *See Aeronautics Commission of Indiana v. The State of Indiana ex rel. Emmis Broadcasting Corp.,* Ind.App., 440 N.E.2d 700 at 702–703 (1982); *Snyder v. Mouser* (1971) 149 Ind.App. 334, 337, 272 N.E.2d 627, 629, *trans. denied* (1972).

Appeal dismissed as moot.

NEAL and ROBERTSON, JJ., concur.